| | |
|---|---|
| DONELL J. BLOUNT, SR.,<br>　　Plaintiff, | )<br>) Civil Action No. 7:06CV00312<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| C/O GENTRY, et al.,<br>　　Defendants. | ) By: Hon. Glen E. Conrad<br>) United States District Judge |

The plaintiff, Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. The case is presently before the court on the motion for summary judgment filed by Correctional Officer Gentry, Correctional Officer Sexton, Tracy Ray, Larry Huffman, Correctional Officer D. Fleming, Correctional Officer J. Fleming, and Correctional Officer Rasnick. For the reasons set forth below, the court will grant the motion for summary judgment. The court will also dismiss Blount's claims against Dr. Williams, Dr. Ohai,[1] Nurse V. Phipps, Nurse Mullins, and Nurse Yates, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

## Background

Blount is presently incarcerated at Red Onion State Prison, where the events giving rise to this action allegedly occurred. Blount's complaint asserts three groups of claims. In his first claim, Blount alleges that Gentry and Sexton used excessive force against him on March 13, 2006. In his second group of claims, Blount alleges that Ray, Huffman, Dr. Williams, Dr. Ohai, Phipps, Mullins, and Yates violated his Eighth Amendment right to be free from cruel and unusual punishment by either approving his placement on the loaf diet or improperly responding

---

[1]　Blount originally named two John Doe defendants in conjunction with his second group of claims. On September 15, 2006, the institutional defendants identified John Doe #1 as Tracy Ray, who was already named as a defendant, and John Doe #2 as Dr. Ohai.

to his complaints about the diet's effects on his stomach. In his third group of claims, Blount alleges that J. Fleming, D. Fleming, Rasnick, Correctional Officer Anderson, Correctional Officer Cox, and Correctional Officer Mullins confiscated his personal property without providing due process.[2]

Gentry, Sexton, Ray, Huffman, D. Fleming, J. Fleming, and Rasnick have moved for summary judgment. The court issued a <u>Roseboro</u> notice to Blount following the filing of the defendants' motion. Since Blount has now filed a response, the motion is ripe for review.

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. <u>Terry's Floor Fashions, Inc. v. Burlington Indust., Inc.</u>, 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

A.  <u>Blount's Claim Against Gentry and Sexton</u>

In his first claim, Blount alleges that Gentry and Sexton used excessive force against him on March 13, 2006. Specifically, Blount alleges that these correctional officers slammed him head-first onto the stairs as they were escorting him to his cell, and that Gentry threatened to kill

---

[2] In response to the pending motion for summary judgment, Blount moved to dismiss his third group of claims in its entirety. The court will grant Blount's motion.

2

him before he went to trial the following month. Blount alleges that he suffered knee injuries as a result of the attack, and that it left him with a scar on his left shoulder, shoulder pain and numbness, leg pain, and knots on his head.

In response to Blount's allegations, Gentry and Sexton have submitted affidavits describing a different version of events. According to their affidavits, Gentry and Sexton were called to escort Blount from the recreation area to his cell on March 13, 2006. When Gentry attempted to place Blount in leg restraints, Blount refused to back up close enough to the gate to allow Gentry to apply them. Blount then began taunting and cursing at Gentry, and questioned why he would not reach further into the recreation unit to apply the restraints. Consequently, Gentry called Sergeant Tate to assist in restraining Blount. After Gentry applied the leg restraints, he and Sexton proceeded to escort Blount across the recreation yard. During that time, Blount was loud and disruptive, and he continued to curse and voice degrading comments toward Gentry. As Gentry and Sexton started up the stairs to Blount's cell, Gentry lost his temper and placed Blount face-down on the stairs. Sexton held onto Blount while the officers waited for Sergeant Tate to assist them. Tate subsequently instructed Gentry and Sexton to escort Blount to his cell. Upon arriving at Blount's cell, Gentry and Sexton were relieved by other correctional officers. Gentry then reported to the Lieutenant's Office, where he met with the Captain and discussed the action that he had taken against Blount.

Gentry and Sexton also argue that Blount's allegations regarding the extent of his injuries are unsupported by his medical records. Blount's medical records indicate that on March 13, 2006 at 1:55 p.m., Nurse J. Deel was called to check on Blount. Deel noted that Blount had been involved in an altercation, that he had been taken to the floor, and that he complained of an abrasion on his back and pain in his left leg and right shoulder. Deel's examination notes

3

indicate that Blount was alert and oriented with a steady gait. Deel noted that Blount had a small abrasion on his left shoulder and a small abrasion on his left knee. Deel further noted that there was no active bleeding, swelling, or further injuries, and that Blount would be taken to the medical department for assessment.

Blount was escorted to the medical department in a wheelchair. Upon his arrival, Blount complained of pain his right shoulder, left knee, and left leg. Examination notes indicate that Blount was alert and oriented, that his respiration was even and regular, and that his right shoulder was normal in appearance. The nurse noted that Blount had a small abrasion on his left knee and a small abrasion on his left shoulder with no active bleeding. On a scale from one to ten, Blount rated his pain as a seven. Blount was instructed to take Motrin and to contact the medical department if the pain did not decrease.

At 2:20 p.m., the nurse noted that Blount was ambulating in his cell without difficulty. However, Blount reported that he was still experiencing pain in his shoulder. The nurse instructed Blount to continue taking Motrin, and advised him that he would be reevaluated if his condition did not improve. Twenty minutes later, the nurse instructed Blount to apply a cold compress to his shoulder. The nurse noted that Blount would not acknowledge the instruction.

At 4:55 p.m., Nurse Bailey stopped by Blount's cell to check on him. Bailey noted that Blount was alert and verbal, that he was able to ambulate to the cell door with a steady gait, that his respiration was even and unlabored, and that he did not voice any complaints.

Three hours later, Blount reported that he found two knots on his head while he was taking a shower. Bailey examined Blount and found one slightly raised area on the left side of his head. Blount denied any complications aside from a headache. The nurse noted that Blount was already taking Motrin and that he should notify the medical department if he required

4

additional treatment. At 9:20 p.m., Blount refused to discuss anything with Bailey. According to Bailey's examination notes, Blount reported that "[did not] want anything."

Blount continued to be monitored by medical staff on March 14, 2006. At 9:30 a.m., Blount voiced no complaints and refused to have his vital signs checked. Likewise, at 6:50 p.m., Blount voiced no complaints. Examination notes indicate that Blount was standing at the cell door yelling at a correctional officer.

On March 15, 2006 at 7:10 a.m., Blount asked to return to his assigned housing unit. Approximately two hours later, he was examined by Dr. Ohai for complaints of right shoulder pain. Upon examining Blount, Dr. Ohai noted that he found no evidence of wounds, swelling, or bleeding in the head, neck, trunk, or limbs. With regard to Blount's right shoulder, Dr. Ohai noted localized tenderness. However, the doctor indicated that he found normal symmetry, no swelling, and no clinical evidence of any dislocation. Dr. Ohai prescribed Motrin for seven days and released Blount to his assigned building. Four hours later, Blount was checked at his cell door, at which point he voiced no complaints.

On March 21, 2006, Blount complained of numbness in his arms. His medical records indicate that he became verbally abusive when staff members arrived at his cell, and that he refused to be evaluated during sick-call.

In response to the institutional defendants' motion for summary judgment, Blount has submitted a sworn affidavit in which he repeats his original allegations against Gentry and Sexton. Additionally, Blount denies having taunted or cursed at either officer. Blount emphasizes that both officers are much larger than him, and that they violently slammed him on the stairs without justification. As for the extent of his injuries, Blount emphasizes that he had to be taken to the medical department in a wheelchair after the incident, that the knots on his head

5

caused headaches for approximately one week, and that the abrasion on his shoulder left a scar. Blount also notes that Dr. Ohai only examined his shoulders and back on March 15, 2006, and that he remained in handcuffs during the entire examination. Blount also alleges that he continues to suffer from occasional pain in his shoulder, especially when he moves it a certain way or lifts a certain amount of weight. Blount submitted a copy of an informal complaint as an exhibit. The form indicates that on April 18, 2006, Blount complained of recurring numbness and pain in his right shoulder and arm. Blount was advised that he would be scheduled for sick-call.

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. See Hudson v. McMillian, 503 U.S. 1, 5 (1992); Whitley v. Albers, 475 U.S. 312, 319 (1986). To succeed on an excessive force claim, an inmate must prove two elements: (1) that the correctional officers acted with a sufficiently culpable state of mind, and (2) that the harm inflicted on the inmate was sufficiently serious. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). With respect to the second element, an inmate "need not show that the force used caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). However, absent the most extraordinary circumstances, an inmate must provide proof of more than de minimis injury. Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). "De minimis injury can serve as conclusive evidence that de minimis force was used." Riley v. Dorton, 115 F.3d 1159, 1168 (4th Cir. 1997).

Applying these principles, the court concludes that Gentry and Sexton are entitled to summary judgment. Blount has simply failed to show that the injuries which resulted from the

6

alleged use of force were more than de minimis. The only injuries described in Blount's affidavit and medical records are small abrasions on his left knee and shoulder, shoulder tenderness, and a knot on his head, all of which are constitutionally insignificant. See Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir. 1998) (holding that abrasions on the plaintiff's wrists and ankles and tenderness over the plaintiff's ribs were de minimis). Although Blount emphasizes that he was transported to the medical department in a wheelchair following the incident, his medical records indicate that he was able to stand and walk without difficulty shortly thereafter. Additionally, it is undisputed that Blount either voiced no complaints or refused to be examined on several occasions following the incident. While Blount now contends that he suffered from headaches for a week as a result of the officers' actions, and that he still experiences occasional pain and numbness, there is no evidence that more than minimal medical treatment has been prescribed or required for his injuries. Given these undisputed facts, no reasonable jury could find that Blount suffered more than de minimis injuries.[3] Accordingly, the court will grant the defendants' motion for summary judgment with respect to this claim.

B.  Blount's Claim Against Ray and Huffman

In his next claim, Blount alleges that Ray, the Warden of Red Onion State Prison, subjected him to cruel and unusual punishment when he authorized prison officials to place Blount on the loaf diet on August 18, 2005 and March 28, 2006. Blount further alleges that Huffman, the Regional Director of the Virginia Department of Corrections, tacitly approved his

---

[3] Although an inmate who suffers a de minimis injury may still recover if "extraordinary circumstances" are present, Norman 25 F.3d at 1263, the court concludes that such circumstances do not exist in this case. See Taylor, 155 F.3d at 485, n. 9 (concluding that the defendants' use of force "was not so 'diabolic' or 'inhuman' as to render the force unconstitutional regardless of injury," where the defendants allegedly jabbed a kubaton into the plaintiff's nose and mouth approximately eight to ten times after the plaintiff adhered to the defendants' orders) (internal citations omitted).

7

placement on the loaf diet in August of 2005, by rejecting a grievance that Blount filed regarding the diet. Blount alleges that the loaf meals caused stomach and head pain, as well as vomiting.

To support their motion for summary judgment, the defendants rely on an affidavit from Warden Ray. Ray confirms that Blount was placed on restrictive feeding measures for the period of August 19, 2005 through August 23, 2005, after Blount refused to return his dinner tray to staff members. Ray also confirms that Blount was placed on restrictive feeding measures for the period of March 29, 2006 through April 1, 2006, after Blount knocked the feeding box off his tray slot and spit in a correctional officer's face. Ray explains that Division Operating Procedure (DOP) 414 provides for the use of restricted feeding measures when an inmate deliberately throws body waste at any employee, or deliberately disrupts the food service operation by misusing or abusing utensils or equipment, or throwing food or drink on an employee. Such restricted feeding measures include serving an inmate a bag meal twice a day consisting of a diet loaf. Prior to placing an inmate on restrictive feeding procedures, the Warden or his designee must obtain approval from the institution's physician. In this case, Ray obtained Dr. Williams' approval prior to placing Blount on the loaf diet in August of 2005. Ray obtained Dr. Ohai's approval prior to placing Blount on the loaf diet in March of 2006. Ray and Huffman argue that they were entitled to rely upon the opinions of these physicians.

In response to the defendants' motion for summary judgment, Blount argues that Ray and Huffman were aware of his complaints regarding the loaf diet. To support this argument, Blount relies on a series of administrative forms that were submitted as exhibits. On August 30, 2005, Blount filed an informal complaint alleging that he had endured five days of stomach and head pain as a result of being placed on the loaf diet. Nurse Phipps responded to the informal complaint on September 2, 2005. Phipps advised Blount that he was not allergic to any of the

8

loaf meal's ingredients, and that its effects on his stomach did not provide a valid basis for discontinuing the use of this restricted feeding procedure. In response, Blount filed a regular grievance requesting that he not be placed on the loaf diet, because the meals cause vomiting and stomach pain. In determining that the grievance was unfounded, Ray emphasized that the Director of Nursing had advised him that Blount was not allergic to any of the loaf meal's ingredients, and that the loaf diet would continue to be ordered if Blount's behavior disrupted the feeding process. Blount appealed Ray's decision to the Office of the Regional Director. Huffman upheld Ray's decision on October 17, 2005, finding that Blount's placement on the loaf diet complied with all departmental policies and procedures.

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). However, inmates are not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. Id. at 347. In order to state a claim of constitutional significance, a prisoner must satisfy both an objective and subjective component. See Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). To satisfy the objective component, a prisoner is required to demonstrate an "extreme" deprivation. Id. Specifically, "the prisoner 'must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such harm resulting from the prisoner's unwilling exposure to the challenged conditions." Id. (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). Additionally, to satisfy the subjective component, the prisoner must allege facts which show that prison officials acted with "deliberate indifference." Strickland, 989 F.2d at 1379.

Applying these principles, the court concludes that Ray and Huffman are entitled to summary judgment. First, Blount has failed to proffer sufficient evidence from which a

9

reasonable jury could find that he suffered any serious injury as a result of being placed on the loaf diet. The injuries of which Blount complains – vomiting, stomach pain, and head pain – are not sufficiently serious to give rise to an Eighth Amendment claim. See Blount v. Williams, 2007 U.S. Dist. LEXIS 21215, *19-20 (W.D. Va. Mar. 26, 2007) (holding that Blount's complaints of vomiting and stomach pain were not sufficiently serious to state a claim under the Eighth Amendment, where Blount challenged his placement on the loaf diet in May of 2005); see also Myers v. Milbert, 281 F. Supp. 859, 855-856 (N.D. W. Va. 2003) ("From a medical standpoint, the alleged adverse effects from eating nutra-loaf: vomiting, frequent bowel movements and burning in the chest and throat are not serious medical conditions."). The court also concludes that Blount has failed to establish that Ray and Huffman acted with deliberate indifference. As supervisory officials, Ray and Huffman were entitled to rely upon the opinions of Dr. Williams and Dr. Ohai in determining whether Blount was capable, from a medical standpoint, of being placed on the loaf diet. See Id. (holding that the defendants were entitled to rely upon the opinions of medical personnel as to whether the nutra-loaf should have been discontinued); see also Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). For these reasons, the court will grant the defendants' motion for summary judgment with respect to this claim.

  C. <u>Blount's Claims Against Dr. Williams, Dr. Ohai, Nurse Phipps, Nurse Mullins, and Nurse Yates</u>

The court will also dismiss Blount's claims against Dr. Williams, Dr. Ohai, Phipps, Mullins, and Yates, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted. In his first claim, Blount alleges that he was subjected to cruel and unusual punishment by Dr. Williams and Dr. Ohai, when they authorized prison officials to place him on the loaf diet on August 18, 2005 and March 28, 2006, respectively. Blount alleges

10

that he suffered from stomach and head pain for five days as a result of being placed on the loaf diet in August, and that he suffered from vomiting after eating one of the loaf meals in March. As previously explained with respect to Blount's claim against Ray and Huffman, such injuries are not sufficiently serious to give rise to an Eighth Amendment violation. See Blount, 2007 U.S. Dist. LEXIS 21215, *19-20; Myers, 281 F. Supp. at 855-856. Accordingly, Blount's claim against these physicians is subject to dismissal under § 1915A(b)(1).

With respect to Nurse Phipps, Nurse Mullins, and Nurse Yates, Blount alleges that these defendants acted with deliberate indifference to his medical needs after he was placed on the loaf diet. Specifically, Blount challenges the propriety of Phipps' response to the informal complaint that Blount filed on August 30, 2005. As previously stated, the informal complaint challenged Dr. Williams' decision to approve Blount's placement on the loaf diet. In response, Nurse Phipps advised Blount that he was not allergic to any of the ingredients in the loaf meal and that its effects on his stomach did not constitute a reason to refrain from placing him on the loaf diet.

Blount also challenges the propriety of Nurse Mullins' response to an emergency grievance that Blount filed on March 29, 2006. In the grievance, Blount alleged that he had received a loaf meal that was wrapped in wax paper and saturated with grease, and that he needed food that he could eat. Mullins responded to the emergency grievance that same day. Mullins advised Blount that his grievance did not constitute an emergency and that there were no contraindications in his medical file. Blount further alleges that Nurse Mullins failed to treat him for stomach pain on March 31, 2006.

Finally, with respect to Nurse Yates, Blount alleges that she failed to properly respond to an emergency grievance filed on March 30, 2006. In the grievance, Blount alleged that he had vomited as a result of eating the loaf meal, and that he was suffering from stomach pain. In

11

response, Yates advised Blount that he would be scheduled for sick-call.

In order to establish a constitutional violation for inadequate medical treatment, an inmate must show that a prison official exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for deliberate indifference involves both an objective and a subjective component. The alleged deprivation must be, objectively, "sufficiently serious," and the official must know of and disregard an excessive risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834-837 (1994). Mere malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Likewise, questions of medical judgment are not subject to judicial review, Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).

Applying these principles, the court concludes that Blount has failed to state a claim against Phipps, Mullins, or Yates. First, as previously explained, the medical problems reported to the nurses are not sufficiently serious to give rise to an Eighth Amendment claim. See Blount, 2007 U.S. Dist. LEXIS 21215, *19-20; Myers, 281 F. Supp. at 855-856. Moreover, Blount has failed to allege sufficient facts to show that any of the nurses acted with deliberate indifference. To the contrary, each of the nurses promptly responded to his written complaints, and either reviewed his medical records or advised him that he would be scheduled for sick-call. While Blount may disagree with the nurses' opinions as to the severity of his complaints, such disagreements fail to state a claim for deliberate indifference. See Russell, 528 F.2d at 319. Morever, even assuming that Phipps, Mullins, or Yates was somehow negligent in her response, neither negligence nor malpractice is actionable under § 1983. See Estelle, 429 U.S. at 105-106. Accordingly, Blount's claims against these defendants must be dismissed.

12

## Conclusion

For the reasons stated, the court will grant the motion for summary judgment filed by Gentry, Sexton, Ray, Huffman, D. Fleming, J. Fleming, and Rasnick, as well as the plaintiff's motion for voluntary dismissal of his third group of claims. The plaintiff's remaining claims against the medical defendants will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff.

ENTER: This 3rd day of May, 2007.

_____
United States District Judge